As a court counsel, my name is Jason Nielsen. I'm here today on behalf of Mr. Lara-Nieto, who cannot be here today as he's been removed to Mexico. And the reason I am here today is to discuss the fundamentally unfair removal he was inflicted upon. Just for the court's reference, questions of law and constitutional evidence standard, this involves both a petition for review from the final agency determination and two district court orders, which were dismissed a complaint for declaratory judgment and complaint for mandamus. And in which Judge Frank, now Senior Judge Frank, below found no jurisdiction. And what I would like to point the court to is a recent decision out of the District of Columbia in Make the Road New York v. McAleenan, that just came out at the end of September of this year. I'll file a 28-J letter, Your Honor. In that matter, it discusses the nationwide injunction against the current administration's attempt to engage in expedited removal, expand the executive branch's power to expedite, to engage in expedited removal of aliens. We don't have that going on here. It's the same basis, Your Honor. The jurisdictional question is the same. Does the district court have jurisdiction to hear the claim or was it stripped by 8 U.S.C. 1252 in the government's brief? They argue they don't, that the district court did not have jurisdiction under 1252-A. You're not arguing what's before us on direct appeal. Now you're arguing that the collateral attack. Correct. I'm arguing the attack on. The denial of the collateral attack. Right. I'm arguing regarding the, our main point is that the 2003 removal order, expedited removal order was so fundamentally wrong. It constitutes what the agency has called a gross miscarriage of justice. That's in re Palacios, which I would. The agency standard. That's not a judicial review standard. Well, for the determination of whether or not the prior order was correct is a gross miscarriage of justice. And that is within the agency's purview. And I would argue that should be given Chevron deference. But, but that hit. That determination of the order. You just jumped about three over three cliffs in that sentence. I, what, what are we, what, what does that, what does that allow us to, why does that affect whether the district court had jurisdiction that the agency will, will, will sometimes set aside its orders with that particular finding? What does that have? The order should not be enforced with that particular finding. Well, I mean, now you say in your brief at one point, the 1231 a five cannot apply if the prior removal order fails to adhere to Congress's clear legislative intent in 1228 B4. Now, give me authority for that assertion. Give me a federal circuit circuit court, better yet, the Supreme court that has said 1231 a five has that kind of gigantic exception. Well, I can't, I could not find a Supreme court case on that. What I do find authority for your honor is that, that in the case, I just referenced the recent decision out of DC stated that even that the provision in eight 1252 that is a stripping is a jurisdictional stripping statute, but it does not supplant or overcome 28 1331 federal question jurisdiction. And the district court still maintains jurisdiction under 28 USC 1331 in hearing cases arising under the expedited removal provisions in title eight. And therefore the district court did have jurisdiction. And that is a logic discussed at length in the case that was just recently issued that there's no affirmative statement about what federal court does have jurisdiction under 1252. How do you square that with our precedent? And I know you're making a novel argument, but our precedent just says that there needs to be substantial evidence to support that removal order. When you get to the reinstatement stage, right? That, that all you look and say is, you know, did he reenter the country illegally? And we, we've, you know, there's several different things we look at your argument doesn't square with our precedent. I don't think your honor, I, that argument, I understand exactly. There are three things though. Is the person identified, right? Was he prior previously removed? Did he unlawfully entered the United States? Yes, they exist. However, when you have such an infirm removal order, which is the 2003 removal order in this case, that it qualifies as what the agency has called a gross miscarriage of justice here. He was charged in the initial case in 2003 as an ex, he was expeditedly removed from the United States as an aggravated felon, having committed a serious drug felony. My understanding of this gross miscarriage of justice is that applied before some legislative amendments. So you're right. There is some case law, old, old case law suggesting that a gross miscarriage of justice can get you out from what I just talked about. This, uh, the substantial evidence standard, but I haven't seen a case in, I don't even know how long, 20, 25 years since they changed the law. So what do we do with that? We look at the cases that were existed before that changed the law and square with the laws that's changing the unconstitutionality of his prior removal order and the unconstitutionality of charging him with something precluding his relief from removal. He was precluded from wait, wait, that's not unconstitutional. He was not charged to bring a charge. It turns out to be unfounded is unconstitutional. No, no, wrong. Not to bring the charge, but to have him removed based upon the charges. Why is that unconstitutional as opposed to just wrong? Because in the expedited removal proceedings, he's not, he's not afforded a full and fair contested hearing before an immigration judge. He's deprived of the procedural due process. Wait, the procedures have been, have been reviewed. I mean, they have not, your honor, he was removed. There's no appeal from the expedited removal process. I don't under, I didn't see a procedure. In expedited removal procedures, there's no appeal. The removal order is entered. The sole claim to stop, to stop or impede removal as the, the respondents discussed in their brief is a claim of protection. There's a removal order entered, but they are afforded withholding of removal and cat prevention, which. That issue is, that's water over the dam. Correct. That could have been challenged a long before. Why does that somehow entitled him to the relief that you want now? Because he is being, he was removed now for a crime he did not commit, was not arrested for, was not charged with. We don't know what he was arrested for, charged with, or removed from. And that is grossly unfair to him, his family, his children. And he's being inflicted. Now that may be true, but you've got, you've got to put it in, you've got to fit it in under the immigration and nationality act into a, a, a claim or appeal. It's within our jurisdiction or the district courts. Correct. And that is what we say is 28 USC, 1331. There is no appeal, direct appeal from. That's just basic jurisdiction. Correct. And there is no INA provision jurisdiction to consider a particular claim, but there is no jurisdiction for a direct appeal of the agencies expedited removal proceeding. So you think that that permits a collateral attack on any of these orders at any time? I think when, not at any time, if they're being reinstated and the government is attempting to reinstate a removal order that is so grossly inappropriate that the fundamental facts for underlying the prior removal order did not exist in, and it's not contested that they existed. There's no contest. The government points to nothing saying he was ever. But you had a chance, you had a chance to, I mean, not you personally, but he had a chance to challenge this within, what was it? 30 days of the final removal order. And he didn't challenge it. And now you're saying we should exercise general federal question. Jared, doesn't that conflict with the 30 day requirement that we have in the statute itself? No, your honor in the statute. It also, there's also a provision for a 60 day attack under, for the implementation of under 1250, 1252. There's a 60 day provision for the implementation allow, providing for an attack under the implementation. And that's the key that discussed in this New York case out of the DC, out of DC, that you have 60 days from the implementation of an agency regulation or mandate to attack that implementation. That's what we're attacking here. That the agency is implementing and deciding to expeditely remove him based on a prior unlawful order. And that's where the jurisdiction lies. What's that 60 day statute? 8 USC 1252 E, I believe it's, yeah, 8 USC 1252 E is the statute. Yes, E3B. See also OA, the site I have is 2019 WL 3536334 at 19. And so that is where we find jurisdiction, that 60 day window to say that the implementation in this matter constitutes a gross miscarriage of justice. And that's where we find jurisdiction. Let's assume that you're right, that that's an implementation. The problem I'm still having, and I don't know that I agree with your argument, but even on its own merits, I'm not sure it's right, which is the implementation of the 2003 removal order was when he was removed, not when it was reinstated. So I still don't understand how that would allow a collateral attack. Well, the removal order in 2003 was on the merits. The implementation here is using that order to trigger the expedited removal and reinstatement provisions under the INA. And that's where it is being implemented now. And when it gets used again, you would say it's being implemented again? Is that the argument you're making? Yes, Your Honor. It's being used again under a different section. It's used under expedited removal proceedings for reinstatement as opposed to when it was first used in 2003, expedited removal as an aggravated felon, not afforded discretionary removal in the immigration courts, which is a whole other issue that we briefed and was not proper because of the charge of the INA 101A43B drug conviction charge. And I would reserve some time for rebuttal unless there's another question at the moment. Thank you. Mr. Stewart. Thank you, Your Honor. May it please the court. I'm Scott Stewart on behalf of the Attorney General. In these cases, Petitioner Jesus Lara Nieto attacks a 2003 removal order as well as the immigration judge's more recent decision upholding a determination that he did not establish a reasonable fear. The court should reject his arguments. His challenge to the removal order is barred on multiple grounds, and there is no basis for disturbing the negative reasonable fear determination. The petition for review should be denied, and the district court decisions in the direct appeals should be affirmed. I can hit, Your Honors, I think, the preliminary points about why there's no attack available on the 2003 final removal order. And I think I can also hopefully bring some clarity on the 60-day challenges to expedited removals that make the Rhode New York District of Columbia recent decision, and hopefully just provide a little clarity there. First on the reason. You're thinking too fast for me to get right. That sometimes happens, Your Honor. I'll try to do better. On the, as an initial matter, the Make the Rhode New York case in the D.C. District Court does not affect things here. That case involves expedited removal orders under 8 U.S.C. 1225 B-1. It's a challenge to a recent expansion under that provision. Section 1225 B-1 is a provision dealing with essentially arriving aliens who, on the face of things, have no entitlement to be in the United States. And the expedited removal mechanism there is a way to effectively summarily remove somebody after considering all relevant claims promptly at the border. It involves people generally who have entered fairly recently and the like. The expedited removal order in this case does not involve that section 1225 B provision. And that's important because this case involves a different expedited removal provision. It's under 8 U.S.C. 1228. That statute involves administrative expedited removals of aliens convicted of committing aggravated felonies. The reason that's important, Your Honor, is because the provision that my friend cited, the jurisdictional provision that he said allows for these 60-day challenges to implementations, is the provision he invoked was 8 U.S.C. 1252 E. You'll see, Your Honor, is that that provision, the name of the provision, is judicial review of orders under section 1225 B-1. It's about review for those other people arriving at the border kind of context. It's not about these section 1228 administrative criminal removal type orders. So if you run through section 1252 B, you'll see that it's focused on that group. So the Make the Road New York case, it's about a different context. It's not about the sort of administrative removal here. It's about a totally different provision. With that addressed, Your Honor, I'd like to make sure to hit two key points. The first is the multiple reasons why the petitioner is barred from challenging his 2003 removal order. As an initial matter, the petitioner doesn't challenge. And as I heard, my friend today actually concedes that the basic requirements that Judge Strass laid out for reinstatement of a removal order, identity, unlawful entry, that he was subject to a prior removal, those aren't contested. What he's attacking is his prior 2003 administrative removal order. That's plainly not something he can do for multiple reasons. The first is, as I believe Judge Strass noted, under section 1252 B-1, it's plainly untimely. This comes around 15 years after that administrative removal order was entered. That certainly does not meet the 30-day bar. There's no way for him to get around that. Even if that did not apply, however, review would still be precluded by the bar on review under 8 U.S.C. section 1235 A-5, the reinstatement bar, which, as we've said in our briefs, Congress was very clear that folks who illegally re-enter after being removed under a- Say 1231 or 1235. 1231 A-5, Your Honor. Yeah, that's what I- Yeah. I thought that- Okay, I misheard. And that provision contains very firm language that there's no review or reopening or the like of these prior removal orders. The final main point I want to make as to this 2003 order, Your Honor, is that even if there were a cognizable gross miscarriage of justice claim here, and we are not acknowledging that that's a cognizable ground or something the court even needs to reach here, there's no way to- And that's what the- Because that's subject to withholding of removal protection still being available in 1231 A-5. Yes, Your Honor. And that's what the reason- Then you get to the reasonable fear. Exactly, Your Honor. Yep. And I'll make sure to hit those points as well. The last one, just on the problem with attacking that initial removal order, Your Honor, is that there's no claim, even if one could be available in some other case, that there was any kind of miscarriage of justice. The petitioner had procedures available to him. He could have petitioned for review. He was represented by counsel. You'll see it page 251 of the record. It appears that his counsel was the one who was served with the final order and the box was checked to reserve the opportunity for a petition for review. He didn't petition for review for so long, as far as this record discloses, or he has claimed seek any sort of contemporaneous effort to correct what he describes as this miscarriage of justice. He delayed 15 years. There's no plausible claim that there was a miscarriage of justice here. Do you agree, though, that the miscarriage of justice standard really isn't applicable anymore? I can't find any cases, at least from this circuit, that still apply that standard in this context. I think we wouldn't acknowledge that it's a valid context at all, Your Honor. It is one of those things where I think it's mentioned here. You see it in some other contexts. And I think it's very rare that a court reaches it. And I don't know much about a court actually granting it. So I'd say that I'm not sure if it would ever be available in this context. We wouldn't concede that it would be. Well, my concern here is exactly what we saw with the district court order here, which is this squishy, gross miscarriage of justice standard. I'm worried about, for example, saying that this is a really sympathetic person, despite the fact that the statutes would require us to reach a particular result. And so that sort of exit ramp really concerns me here with such a comprehensive immigration statutory scheme. Right, Your Honor. And that's why we certainly don't think it's a proper ground. We would say, if there could ever be a conceivable case, this is definitely not it. But I think those concerns are all very well taken. And I think, as Your Honor also notes, and I think as some of my earlier discussion indicated, it's a very comprehensive and carefully crafted jurisdictional scheme. So any kind of miscarriage of justice exceptions would seem to do violence to that. And that's why I think your concerns are all very well taken. On the issue, moving to really the number two in the separate main issue here, Your Honor. Your Honors, there's no grounds to disturb the immigration judge's decision upholding the reasonable fear determination here. As Your Honors know, it's not easy to get through to make the withholding of removal claim or a convention against torture claim. Those are not easy burdens. And this threshold reasonable fear standard is higher because of those reasons. Whatever standard the court applies, be it substantial evidence, a facially legitimate and valid reason, the petitioner just cannot surmount what he needs to. Is there a circuit precedent on the standard that should apply? I'm not aware of any, Your Honor. I think the standard to apply in reviewing reasonable fear proceedings, it's one of those things that I don't think has percolated very extensively in the courts of appeals. I believe we cite a Ninth Circuit case in our standard of review section where the Ninth Circuit, I believe, applied the substantial evidence standard. But it's not something that's extensively percolated. I would note here that the reasoning that was given for the determination of no reasonable fear is legitimate, makes sense, aligns with the record. The petitioner's testimony, as the record shows, was about Mexico. It was very general. He often said, I don't know what he might face. He said he was concerned about poverty, society in itself, violence, and fanatics, and cartels. But ultimately, his claims seemed generally to be about his deafness. But even then, this is around pages 350 to 361 generally. But the general statements about violence and the like are 356 and 358. On deafness, I'd emphasize 357 and 360, where on 357 he said, look, it'll be hard to get a job. I might get fired, I believe he said. Or he said he was made fun of in the past. You know, those are unfortunate, but do not rise to the threshold needed to get through that reasonable fear door. So again, under any standard, Your Honor, I think that the record here amply supports the negative reasonable fear determination. Can you, in a few seconds, if he survives that interview, what happens? I think. Now, does the IJ conduct a withholding, full-blown withholding hearing? I believe he would then be referred to a withholding only. I believe that withholding only proceedings for withholding the persecution aspect, as well as the cat withholding. In short, I don't know that it would be the same IJ, but it would be in that sort of thing. If it goes to a hearing, then if withholding relief is granted, for someone like Mr. Nieto, would there be an alternative place of removal identified, or likely not? The possibility is available, Your Honor. I think it becomes one of those practical questions. Often, removing folks to their non-native country presents just practical difficulties. Will the country accept them? That sort of thing. So I think it would raise some of those questions. Other things that could arise in due course were, oh, let's say if there were circumstances found that he met the standard, maybe they change. Maybe there's someone where else he can go. Those are the kinds of things that I think would be explored. But I think for the reasons we've given, we don't quite get there. If there are no further questions. I'm curious about is the citing of the wrong offense category, A43B instead of F. If they cited the right category, would he have been subject to expedited removal for a crime of violence as opposed to a controlled substance? I didn't go track that down. I believe that. I believe that's ultimately what the final removal order itself does invoke that statute, Your Honor, and does fit into that aggravated felony category. I do think that it does appear just a scrivener's error that- No, but I'm not sure that I got some sense out of opposing counsel's brief that the expedited removal doesn't apply to all categories of A43. I would think it would apply to crimes of violence as well as controlled substance, but these statutes are awfully complicated. Right. No, I didn't take that to be his argument. I thought that- Well, it was more a recital of the prejudice. Right, right. No, I think- I was curious, and if it's- that's enough. Right. No, I think that he still fits within the correct- or the later invoke provision does kind of meet the right category. If citing the correct charge would have resulted in the same finding of expedited removal, that certainly makes the gross miscarriage argument quite a bit less strong. Right, Your Honor, and I think the other features kind of bear that out because you do have the right provision or the provision that seems to fit. I want to be careful about saying- because we just don't have a lot of record there, the provision that seems to fit. I would also note that this is page 252. It does note that it's an assault conviction. Even when it's citing this 101A43B piece, it then cites the U.S. Code piece and omits the B from that, which again suggests that kind of Scribner's error. But in all events, Your Honor, I think you're right to point out that there wasn't- there's not a good claim for prejudice here. Well, I'm not pointing it out. I was just curious. The argument is premised on he would not have had the expedited removal if he'd been charged correctly. Right, right. Basically saying we don't have the records to track that down, although maybe if he got relief, I don't know what- Oh, no. I think he still would have been subject to expedited- it's the same. The offenses both fall into the aggravated felony, you can be removed on an expedited basis category. I think his complaint is more about- Well, if we accepted the gross miscarriage argument as sort of a freestanding basis to look behind the reinstatement order and vacate the initial expedited removal order, now what happens next in your view? I don't think he comes back to the country free of all DHS proceedings. Right, Your Honor. It's not- So would he still be subject to a new expedited removal proceeding making the correct charge? May I answer, Your Honor? I see my time's up. No, no, no. Just quickly, yeah. I suppose I want to be careful about speculating just because of the passage of time and how that may affect things. We have limitations periods and so forth. Right. So I want to be careful there, but I think the agency certainly wouldn't concede that it would preserve its options and see what would be available if that were to happen. Thank you, Your Honor. Yep. Mr. Nielsen, have some rebuttal? Thank you, Your Honor. I just want to address what Judge Loken, you were just discussing with the counsel for the government. No, he would not have been subject to the expedited removal proceedings, categorically. 42B is regarding drug offenses for which there is no waiver. Under INA 237H, there is a waiver for all other aggravated felonies. He, at the time, had an approved I-130, which is a family petition in which a U.S. citizen petitions for their alien relative. That petition, in conjunction with an introduction of status petition, with a waiver- You're saying that a convicted murderer would not have been eligible for expedited? I'm saying there would have been a waiver available, whereas for a drug conviction, there's not. I know it doesn't sound logical- Conventionary waiver? Yes. All right, so the drug offense is- The drug offense, the problem with it- Can't be waived and all others, you can be a serial killer and still get a friendly immigration officer to- It would be an exceptionally high burden, but yes. Okay. I recognize that- That clarifies it. Yeah. On that, so he would have been eligible for that. In addition, it's the government's burden by a clear and convincing evidence standard to establish the alien is removable as charged. They do not cite a statute regarding drug offenses in their documentation. It doesn't exist in the record. It didn't exist in the documents provided in 2003. It did not cite a Texas state statute under which he was convicted for an A43F aggravated removal. They have established no grounds for aggravated removal, be it under A or F. Can I ask you about the reasonable fear determination? Yes. We have a case from August, I don't think it's cited in any of the party's briefs, called Cardozo-Salazar versus Barr. And I don't know if you're familiar with it, but it suggests that this is not reviewable, that the reasonable fear determination is a final order and it is not reviewable by us. Any reaction to that? Regarding the reasonable fear determination issued, I guess, by the immigration judge referring- Yeah, after the telephonic hearing. Yes. Well, the telephonic hearing, and I think the judge discussed some of the issues with my client's deafness. But I think that the judge misapplied, and so I think the review for this court is de novo on the law. Because Nguengwe, N-G-E-N-G-W-E-V-U-K-Z, which is in the briefing, from the Eighth Circuit, cites matter of TZ, which is the deliberate imposition of economic and other physical harm on an alien requesting fear-based relief under withholding in CAT to be able to prove his claim. And counsel for the government pointed out, in the past, my client hadn't suffered harm rising to the level of persecution, which we conceded. But his future fear of persecution, I think, we could establish by a full hearing on the proceedings. And just for- I understand that's your argument, but you don't have a direct sort of response to Cardozo-Salazar. It doesn't sound like you're familiar with him. I under- It's a new case. Yeah, I would have to reread that. I'd have to check that one out. And I see my time has expired. So thank you. Very good. Thank you, counsel. Case has been thoroughly briefed and argued, and we will take it under advisement.